## Harbison *versus* M'Cartney *et al.*

1. Where property was attached by a constable, under the Act of 12th July, 1842, which was duly prosecuted to judgment and sale of the attached property,

[Harbison *v.* M'Cartney et al.]

*Held*, that such sale passed the title to the property, and that a sale previously made, upon another constable's execution levied subsequently to the attachment, was void.

ERROR to the Court of Common Pleas of *Indiana county.*

George and Edward Duffield, tenants on the land of Samuel M. Russell, were the owners of the undivided half of four hundred dozen of wheat in the sheaf, lying in Russell's barn, of the crop of 1850. On the 14th October, 1850, M'Cartney and Coleman, the defendants, by process of attachment before a justice of the peace, attached the interest of Edward Duffield in the said wheat and some rye, which attachment was duly returned and judgment obtained thereon against Edward Duffield, on the 16th October, 1850, for $53.34. On the same day, 16th October, 1850, an execution was issued on this judgment, and a levy entered thereon by the constable, in the justice's office, of Edward Duffield's interest in the wheat in question. Of this execution the constable made return on the 5th November, 1850, that by virtue thereof, he had sold the one-fourth of four hundred dozen of wheat, as attached, to Coleman and M'Cartney, on the 21st October, 1850. He states in his testimony that *he sold at one o'clock*, P. M. After the sale, M'Cartney and Coleman threshed out the grain at the barn, and took and carried away the one-fourth, being the interest of Edward Duffield.

On the 16th October, 1850, Andrew R. Sloan obtained a judgment against Edward Duffield, before a justice of the peace, for $22.11, and on the same day an execution was issued thereon and a levy made, on the one undivided half of the four hundred dozen of wheat above-mentioned, being the interest of Edward Duffield. On the 6th November, 1850, the constable made return of this execution, that by virtue thereof he had sold the interest of Edward Duffield in said wheat, to Robert Harbison, plaintiff in this case, for the sum of $23, on the 21st October, 1850. The constable states in his testimony, that *he made the sale at nine o'clock*, A. M. M'Cartney and Coleman, the defendants, were present at this sale.

On these facts, the court directed the jury to find for the defendants, and this is the error assigned.

*White* and *Coffey*, for plaintiff in error.

The position we assume is, that the sale under which we claim, on Sloan's execution, having been made at nine o'clock, A. M., vested the title to the grain in Harbison, and gave him a right of action against the defendants for removing it, the sale under which they claim not having been made until one o'clock, P. M., of the same day.

[Harbison *v.* M'Cartney et al.]

But we deny that the attachment has the effect ascribed to it. It is true that it entitles the attaching creditor to priority of payment out of the proceeds of the property attached, when sold; but it has no greater extent. Any other creditor may levy on and sell it, nor does the attachment interpose any obstacle to the execution of his process. The attachment places the property *in custodia legis*, to secure the proceeds to the creditor, but it does not clothe that creditor with the exclusive right to sell after he has obtained his judgment. Act 22d March, 1850, sec. 1; 1 Bouv. Law Dic. 100.

*Wm. M. Stewart*, for defendant in error, contended, that after the attachment served, the property was in the custody of the attaching officer, and that any subsequent interference with it was a trespass, and that the attaching officer only could pass a title to it by a sale.

A constable has no right to remove property which has been previously levied on by another constable, and whilst it is subject to the first levy. *Winegardner* v. *Hafer*, 3 Harris, 144.

The officer, by the seizure under the execution, acquires a special property in the goods, which would enable him to maintain trespass or trover for them if improperly taken from him, and under the authority of the law he is invested with full powers to sell and transfer the absolute property in them. *Lytle* v. *Mehaffey*, 8 Watts, 275.

The opinion of the court was delivered December 11, 1854, by

LOWRIE, J.—This is a conflict between an attachment proceeding before a justice of the peace, under the Act of 12th July, 1842, and an execution on an ordinary proceeding before another justice. The attachment was the first writ executed, by attaching an undivided interest in a quantity of grain in the barn, and it was duly pursued to judgment and sale in about a week; but the constable holding the execution in the other case, levied on the same grain, and sold it in the barn and undivided, a few hours earlier than the other. The court decided that no right passed by the sale in the second case, though it was first made; and this is right.

From the moment of the service of the attachment, the grain was in the possession of the officer, for the purposes of that case, and he was responsible for its safe keeping; and though the law might allow another of its officers to obtain a lien upon it by a *quasi* levy, subject to the interests which had previously attached, yet it could not allow him to take it out of the possession of the other officer, or to enter into an unbecoming strife, in order to get any precedence of him; and without a rightful possession he could not sell. There can be no proper conflict or

[Bell *v.* Young.]

competition between official duties, for they are all branches of the same system, and it does not contain within itself the sources of discord.

Judgment affirmed.